BRANDON D. SHORT and BDS PROPERTIES, LLC, Plaintiffs,
v.
WILLIAM TURNER; TRACEY C. TURNER; GREGORY N. XERRAS, and XERRAS DEVELOPMENT, LLC, Defendants.
No. COA09-618.
Court of Appeals of North Carolina.
Filed March 2, 2010.
This case not for publication
K&L Gates, LLP, by Roy H. Michaux, Jr. and Samuel T. Reaves, for Plaintiffs-Appellants.
The Chagaris Law Firm, P.A., by Christopher G. Chagaris, for Defendants-Appellees.
BEASLEY, Judge.
Plaintiffs appeal the trial court's order granting summary judgment in favor of Defendants on issues of misrepresentation, negligent misrepresentation, and unfair and deceptive trade practices. We reverse.
In February 2005, Plaintiffs, Brandon Short and BDS Properties, LLC, acquired property in a residential neighborhood located in Charlotte, North Carolina. Soon after purchasing the home, Brandon Short met with Defendants Greg Xerras and William Turner to discuss the possibility of rebuilding an existing structure on the newly acquired property. In May 2005, believing that William Turner and Greg Xerras owned Kingsland Construction, LLC, Brandon Short entered into an agreement for Kingsland Construction to build a new home on the property. Pursuant to the terms of the contract, the projected cost of the home was $1,270,258.00 with a management fee of $254,052.00 to be paid to Kingsland Construction. In addition, the construction contract contained an arbitration clause stating: "The disagreement arising out of this contract or breach thereof shall be submitted to binding arbitration of this Agreement pursuant to the rules and regulations of the standard form of arbitration procedure of the American Arbitration Association. Any decision made by the arbitrator shall be binding upon the parties." Following the signing of the May 2005 construction contract, the size of the prospective home was enlarged. Accordingly, the total cost of completing construction of the home increased to approximately $1,622,000.00. Soon thereafter construction of the home began.
Plaintiffs allege that once construction of the home began, Kingsland Construction submitted several new budgets for projected completion costs, "to induce [Brandon Short] to make additional payments for construction." In reliance on the estimates presented in the budgets, Brandon Short continued to advance Kingsland Construction the requested funds for completion of the home. While the main structure of the home was completed in April 2007, several areas within the home remained unfinished. On 19 September 2007, Plaintiffs entered into a contract to sell the home to a prospective buyer. However, because the buyer discovered substantial defects in the construction of the home, the buyer cancelled the contract of sale. Thereafter, Plaintiffs filed a Demand for Arbitration in October 2007 to recover the cost to correct deficiencies in the home, damages due to the lost sale of the residence, liquidated damages and repayment of management fees. Plaintiffs learned that William Turner's wife, Tracey Turner, was the sole owner of Kingsland Construction. Later, on 30 January 2008, Plaintiffs filed a civil action against William Turner, Tracey C. Turner, Gregory Xerras and Xerras Development, LLC. In their Complaint, Plaintiffs alleged Fraud, Negligent Misrepresentation, Tortious Interference with Contract, and Unfair and Deceptive Trade Practices.
On 16 June 2008, prior to the commencement of an arbitration hearing, Kingsland Construction confessed judgment in favor of Plaintiffs in the amount of $950,000.00. On 17 July 2008, Plaintiffs filed an Amended Complaint adding an additional Misrepresentation claim against Defendants and deleting the earlier Fraud and Tortious Interference with Contract causes of action. In the Amended Complaint Plaintiffs alleged that:
[a]t the time they solicited the work from the plaintiffs and executed the Agreement, the Turners and Xerras knew that William Turner and Gregory Xerras were not employees or members of Kingsland, but were operating Kingsland's business as partners using Kingsland's general contractor's license in violation of Chapter 87 of the North Carolina General Statutes.
On 23 December 2008, Defendants William Turner and Tracey C. Turner filed a motion for summary judgment arguing that there are no genuine issues of material fact with respect to all of Plaintiffs' claims. Later, on 26 December 2008, Defendants, Gregory N. Xerras and Xerras Development, LLC filed a similar motion. On 3 February 2009, the trial court concluded "that there are no genuine issues of material fact, and that Defendants are entitled to judgment as a matter of law on all claims."
Plaintiffs appeal the trial court's order arguing: I) "Summary Judgment was not proper based on any argument that the claims were required to have been arbitrated"; and II) "Summary Judgment was not proper based on any argument that there were no material issues of fact to be determined by a jury."

I.
Plaintiffs first argue that "Summary Judgment was not proper based on any argument that the claims were required to have been arbitrated." We agree.
Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (2009).
A defendant who moves for summary judgment assumes the burden of positively and clearly showing that there is no genuine issue as to any material fact and that he or she is entitled to judgment as a matter of law. A defendant may meet this burden by: (1) proving that an essential element of the plaintiff's case is nonexistent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense which would bar the claim.
James v. Clark, 118 N.C. App. 178, 180-81, 454 S.E.2d 826, 828 (1995)(internal quotations and citations omitted).
Once the defendant's burden is met, the plaintiff must "produce a forecast of evidence demonstrating that the [non-moving party] will be able to make out at least a prima facie case at trial." Collingwood v. G.E. Real Estate Equities, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989). "An appeal from an order granting summary judgment raises only the issues of whether, on the face of the record, there is any genuine issue of material fact, and whether the prevailing party is entitled to a judgment as a matter of law." Smith-Price v. Charter Behavioral Health Sys., 164 N.C. App. 349, 353, 595 S.E.2d 778, 782 (2004).
In Rodgers Builders v. McQueen, 76 N.C. App. 16, 331 S.E.2d 726 (1985), our Court addressed a factually similar case. There, the plaintiff agreed to construct a multi-unit housing project on land purportedly owned by McQueen Properties. Id. at 18, 331 S.E.2d at 728. The construction contract required that all disputes and claims that arose between the parties be settled by arbitration. Id. After a dispute arose, the plaintiff demanded arbitration to settle all claims arising under the contract. Id. at 19, 331 S.E.2d at 728. However, before the arbitration proceeding began, "[the] plaintiff learned that Parkhill Associates, a limited partnership in which James McQueen and McQueen Properties are the general partners, was in fact the title owner of record of the land on which the housing project had been built." Id. The plaintiff amended its demand for arbitration and joined Park Hill Associates as a party. Id. However, the plaintiff failed to include James McQueen in the amended demand for arbitration.
Thereafter, the plaintiff filed a civil action against the defendant "for money owed for labor and materials, and for fraud and unfair and deceptive trade practices." Id. The plaintiff's civil action was delayed until after the outcome of the arbitration proceedings. Id. After the arbitration hearing, "an award was entered `in full settlement of all claims submitted to [the] arbitration' which directed McQueen Properties and Parkhill Associates, jointly and severally, to pay plaintiff $407,259. The award was confirmed by the superior court and entered as a judgment." Id. After the completion of the arbitration proceedings, the plaintiff filed an amended complaint against the defendant "seeking compensatory and punitive damages for fraud, unfair and deceptive trade practices, and negligent misrepresentation." Id. In response, the defendant filed a motion for summary judgment based upon, amongst other things, the "judgment entered on [the] arbitration award[.]" Id. at 22, 331 S.E.2d at 730. The trial court granted the defendant's motion for summary judgment and the plaintiff appealed. Id. Upholding the trial court's summary judgment order, our Court held that the plaintiff's civil claims "could and should have been, brought forward and determined in the prior arbitration proceeding. Thus, defendants have shown that the claims are barred by the res judicata effect of the judgment entered on the arbitration award and that they are entitled to summary judgment." Id. at 30, 331 S.E.2d at 735. Though several of the plaintiff's claims were not actually addressed in the arbitration proceeding, our Court reasoned that an arbitration award acts "as an estoppel not only as to all matters actually determined or litigated in the prior proceeding, but also as to all relevant and material matters within the scope of the proceeding which the parties, in the exercise of reasonable diligence, could and should have brought forward for determination." Id. at 22, 331 S.E.2d at 730. Moreover, despite failing to join James McQueen in the arbitration claim, our Court reasoned that because James McQueen had strong financial interest in the determination of the issues and was an active participant in the arbitration proceedings, "[h]e thus is bound by the judgment entered on the arbitration award just as if he were a named party to the proceeding." Id. at 29, 331 S.E.2d at 734.
Here, similar to Rodgers Builders, Plaintiffs requested an arbitration hearing on several claims pursuant to a contractual agreement. Plaintiffs' arbitration demand omitted William Turner, Tracey C. Turner, Gregory Xerras and Xerras Development, LLC. Thereafter, Defendants filed a civil suit raising several additional claims. However, unlike the Courts decision in Rodgers Builders, Defendants confessed judgment in favor of Plaintiffs in the amount of $950,000.00 before an arbitration award was entered. The North Carolina Rules of Civil Procedure provide that "Judgments entered in conformity with this rule shall have the same effect as other judgments except that no judgment by confession shall be held to be res judicata as to any fact in any civil action except in an action on the judgment confessed." N.C. Gen. Stat. § 1A-1, Rule 68.1(e) (2009). Because the confession by judgment could not be held as res judicata as to any fact in Plaintiffs' later civil action, the issue of damages is not barred in the current civil action.
Accordingly, we hold that the trial court's summary judgment order was not appropriately based upon the determination that Plaintiffs' claims were barred by res judicata.

II.
Next, Plaintiffs argue that "Summary Judgment was not proper based on any argument that there were no material issues of fact to be determined by a jury." We agree.
Following a Complaint and an Amended Complaint, Plaintiffs raised separate causes of action for misrepresentation, negligent misrepresentation and unfair and deceptive trade practices causes of action before the trial court. In response to Defendants' motion for summary judgment, the trial court determined that Plaintiffs' causes of action presented no genuine issues of material fact and Defendants were entitled to judgment as a matter of law. After an examination of each of Plaintiffs' remaining causes of action, we hold that the trial court erroneously granted Defendants' summary judgment motion.
The trial court erred in concluding that no genuine issue of material fact existed with respect to Plaintiffs' cause of action for unfair and deceptive trade practices. "The elements for a claim for unfair and deceptive trade practices are (1) defendants committed an unfair or deceptive act or practice, (2) in or affecting commerce and (3) plaintiff was injured as a result." Phelps-Dickson Builders, L.L.C. v. Amerimann Partners, 172 N.C. App. 427, 439, 617 S.E.2d 664, 671 (2005). "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Bartlett Milling Co. v. Walnut Grove Auction & Realty Co., 192 N.C. App. 74, 82, 665 S.E.2d 478, 486, disc. review denied, 362 N.C. 679, 669 S.E.2d 741 (2008) (internal quotations omitted). "Where an unfair or deceptive practice claim is based upon an alleged misrepresentation by the defendant, the plaintiff must show `actual reliance' on the alleged misrepresentation in order to establish that the alleged misrepresentation `proximately caused' the injury of which plaintiff complains." Tucker v. Blvd. At Piper Glen LLC, 150 N.C. App. 150, 154, 564 S.E.2d 248, 251 (2002).
Here, Plaintiffs contend that Greg Xerras and William Turner, "were in over their heads", misrepresented the cost of the project and failed to provide adequate supervision to ensure that the construction costs did not exceed the budget. A review of the record illustrates that genuine issues of material fact remain with respect to Plaintiffs' cause of action for unfair and deceptive trade practices. Plaintiffs allege that William Turner and Greg Xerras represented that they were owners of Kingsland Construction. In reliance on these representations, Brandon Short entered into a construction contract and advanced Kingsland Construction additional funds pursuant to budgets that were provided to Brandon Short after the original date of contract. But for the alleged misrepresentations, it is doubtful that Brandon Short would have entered into the construction contract. Accordingly, we hold that a genuine issue of material facts remains with respect to Plaintiffs' cause of action for unfair and deceptive trade practices.
Next, a genuine issue of material fact existed with respect to Plaintiffs' negligent misrepresentation cause of action. "The tort of negligent misrepresentation occurs when in the course of a business or other transaction in which an individual has a pecuniary interest, he or she supplies false information for the guidance of others in a business transaction, without exercising reasonable care in obtaining or communicating the information." Schlieper v. Johnson, ___, N.C. App. ___, ___, 672 S.E.2d 548, 552 (2009) (citation omitted). "With respect to negligent misrepresentation, whether liability accrues is highly fact-dependent, with the question of whether a duty is owed a particular plaintiff being of paramount importance." Bob Timberlake Collection, Inc. v. Edwards, 176 N.C. App. 33, 40, 626 S.E.2d 315, 322 (2006).
Here, Plaintiffs presented sufficient evidence to support a prima facie case of negligent misrepresentation. Defendants had a pecuniary interest in the construction fee and management fee payments that they obtained from Plaintiffs. During the course of William Turner's and Greg Xerras' business relationship with Plaintiffs, they submitted several budgets with projected completion costs to Brandon Short. In reliance on the submitted budgets, Brandon Short advanced additional funds for the completion of the construction project. An expert analysis of a "Final Accounting Summary" submitted by Defendants, revealed that Brandon Short may have been billed inaccurately throughout the construction of the home. Because the billing inaccuracies were unbeknownst to Brandon Short, he continued to advance funds after each updated budget he received from Defendants. Whether the billing updates were prepared and submitted to Brandon Short without reasonable care is a question that should be submitted to a jury. Accordingly, we hold that genuine issues of material fact persist with respect to Plaintiffs' negligent misrepresentation cause of action.
Finally, Plaintiffs contend that Greg Xerras and William Turner in partnership with Kingsland Construction, "undertook to supervise the work on the project, which they failed to do in accord with the standards prevailing in the local community, and as a result, the plaintiffs are faced with the cost to correct deficiencies in construction that will exceed $10,000." Genuine issues of material fact remain with respect to Plaintiffs' partnership issue.
"A partnership is an association of two or more persons to carry on as co-owners a business for profit." N.C. Gen. Stat. § 59-36(a) (2009).
[A partnership] may be created by the agreement or conduct of the parties, either express or implied. . . . A voluntary association of partners may be shown without proving an express agreement to form a partnership; and a finding of its existence may be based upon a rational consideration of the acts and declarations of the parties, warranting the inference that the parties understood that they were partners, and acted as such.
Eggleston v. Eggleston, 228 N.C. 668, 674, 47 S.E.2d 243, 247 (1948) (internal quotations omitted). "The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business. . . ." N.C. Gen. Stat. § 59-36(a).
Here, Brandon Short entered into a contractual agreement with Kingsland Construction. Pursuant to the contractual agreement, Kingsland Construction was to receive a "management fee." Subsequent budgets and deposition testimony indicate that the management fee was to be paid to William Turner and Greg Xerras. As discussed above, the evidence indicates that the budget sheets submitted to Brandon Short by Defendants may have been erroneous and negligently prepared. The trial court was presented with prima facie evidence that Defendants negligently prepared the erroneous billing statements submitted to Brandon Short. As partners, of Kingsland Construction, Defendants would be responsible for the negligent actions of a member of the partnership. Further, Defendants would also be responsible for any substantial defects in the construction of the home which were discovered upon Plaintiffs' attempt to sell the house. Accordingly, we hold that the trial court erroneously determined that no genuine issue of material fact existed with respect to Plaintiffs' misrepresentation cause of action.
Because genuine issues of material fact remain, we reverse the trial court's summary judgment order.
Reverse.
Judges WYNN and CALABRIA concur.
Report per Rule 30(e).